Our next case this morning is case number 415-0807, Enbridge Pipelines v. Monarch Farms, LLC. For the appellant, we have in the last name for me, Counsel? Spasia. Mr. Spasia. And then for the athlete, we have Mr. Plura. Is that how you pronounce it, Counsel? I think you have it the other way around. I'm actually the appellant. Well... Here begins the discussion, right? We know that the trial court ruled in your favor as far as the issue that we're here on today, the sanction issue. And so, leading up to today, we've actually had some discussions about, should you be appellant or should you be athlete? So, there we are. Great, wonderful. All right. You may proceed, Counsel. May it please the Court, Counsel. My name is John Spasia. I'm here on behalf of Monarch Extension Pipeline Company. In the next 20 minutes, I intend to focus on two issues. The first is, the trial court's abuse of its discretion in finding that Attorney Plura's challenges to good faith negotiations during the remand proceedings did not violate Rule 137. The second is, why an expedited process in the trial court is necessary to impose sanctions in the form of reasonable attorneys to protect the integrity and efficient operation of the courts, to deter and prevent the filing of false and frivolous claims, to ensure that parties like IEPC will be induced to pursue Rule 137 sanctions when they are warranted, and to warn that future transgressions will not be countenanced. As for the violation of Rule 137 in the trial court's abuse of its discretion, I'd like to start by looking back. I'm here on July 16th of 2016 for an oral argument in the Kurth cases. And at that time, IEPC informed the court that Attorney Plura's litigation conduct fell into a pattern that included the following. One, a disregard for controlling precedent, and specifically the Supreme Court's holding in the Forest Preserve decision. Two, efforts to mislead the court. Three, a pursuit of reckless damage claims founded on a contradiction of sworn testimony. And four, a fundamental disregard for appellate procedure. I would submit to the court that this same conduct, this same pattern, repeated itself during the remand proceedings in these Monarch Farms cases. When he filed those claims to the Good Faith Negotiations, and it was on January 12th of 2018, Attorney Plura repeated the same frivolous arguments that had been rejected by six circuit courts, that had been rejected by the appellate court in a published decision in Frye on April 6th of 2017, and that had been rejected, I might say emphatically, during the Kurth remand proceedings, and not appealed. It is all of these decisions, most of which expressly relied on the Supreme Court precedent in Forest Preserve, which are part of the record that this court must review. I hope that there was an adequate basis for the trial court's decision here. Well, counsel, I'm sure you're aware of this, and you've taken a look at the trial court's decision in this case. Specifically, the trial court noted that Mr. Plura did not bring up the public use argument based on Kurth, and the court seems to rely on that and think that he did proceed in good faith with respect to his other allegations. And this is an abuse of discretion standard, so where does that leave us? Well, first of all, with respect to the ultimate withdrawal of the marathon issue on the public use, it's our position that these cases here are different than the Kurth cases in this respect. This court had already stricken the marathon arguments on June 6th of, I believe it was, 2016. So the fact that they were ever, that there was even discovery requested on remand, of relating to marathon, contradicted this court's order striking the marathon arguments, the same marathon arguments years before. And it also was inconsistent with this court's decision in Interveners 3, which already decided the alleged private pipeline. So, and one more thing. As for the ultimate withdrawal of the marathon arguments, this court has recognized, and the appellate court in Walsh recognized, that even if there was one meritorious argument that related to marathon, that does not excuse the remainder of the arguments that were produced. And the last thing is this on marathon. After the court struck the discovery request related to marathon, essentially the sole issue that was left in these cases was the challenge of good faith negotiations. So the bulk of the work that was done here, the overwhelming majority of it, was related to the defense of these frivolous challenges to the good faith negotiations. Counsel, you began by referring to an oral argument in July of 2016, which is a reminder of how long these cases have been bouncing around. But it seems to me, you're the appellant here appealing the denial by the trial court, in this case Judge Lawrence, of your request for sanctions under Rule 137. That, as Justice Holder-White pointed out, this is a discretionary call for the trial court to make under all the circumstances presented. The trial court, for the reasons the court explained, as you just referred to, denied your request. The standard of review is whether this was an abuse of discretion, because this is a discretionary matter in the trial court. And essentially that means that we have to, before we can reverse, we have to conclude that the trial court's action in denying your request was unreasonable. No reasonable person in the position of the trial court could have turned down your 137 request. It seems to me, this is, especially when the court has made the findings it has here, acknowledged its wide discretion, pointed out why it chooses not to impose sanctions in this case. I might add, in contrast to Judge Vinson, in the case where that court determined that 137 sanctions were appropriate, and then the question before us was, was the imposition of sanctions unreasonable? And we said, no, it wasn't. What about this gives us the basis to conclude that Judge Lawrence's action in this case was unreasonable and needs to be reversed? No reasonable person could make the findings that the trial court made in this particular case, relating to good faith, where it didn't just determine that the appraisal requirement was contrary to the Illinois Supreme Court's decision. It said it's clearly contrary to that decision. And incidentally, that ruling by the trial court in June or July of 2018, it was the same as his ruling back on November 10th of 2014. So the reason that no reasonable person could conclude that Rule 137 was complied with here is because these arguments that were raised on January 12th of 2018 had been soundly rejected, not only by six trial courts, but by the appellate court in the 3rd District in a case that was brought by Attorney Flora. And in these circumstances... Well, pausing right there. Sure. Is there any reason to believe that a rejection by a trial court of an argument made in an unrelated case but involving the same issues is somehow binding upon the new trial court or upon the lawyer who is making reference to it? Counsel, let me add to that. In the 3rd District, their decision would not be binding on this court. So I'd like you to address both of those. Absolutely. The point of the six circuit court decisions is not only that they ruled against Attorney Flora. The point of the 3rd District's opinion in Frye is not only that it ruled against Attorney Flora. The point is that in each of those decisions, the courts pointed out that the arguments were contrary to binding Illinois Supreme Court precedent. That's the point. But that's not an interpretation that was binding upon the trial judge to whom the argument was now going to be made. In other words, reasonable counsel could say, Judge Berthel up in Woodford County said this was contrary to this binding authority, but he was wrong to so say. That would be permissible legal argument, wouldn't it? Well, but it's not reasonable. There's no reasonable interpretation of the Illinois Supreme Court's decision in Forest Preserve that would lead a reasonable lawyer to believe that there's an appraisal requirement. And in addition to that, we not only have the binding precedent of the Illinois Supreme Court in Forest Preserve. We also have the standard that this court established, which is the strong deference given to the commission. And the commission had already decided that an appraisal wasn't required during good faith negotiations. And this court affirmed that decision of the commission. And in fact, in this court's decision in Interveners 2, it specifically noted that the land market study that was being used was not an appraisal. Our position here is simple. It's that no reasonable lawyer could have repeated these arguments, especially on January 12th, 2018. And the other reason that sanctions are warranted here, and that no reasonable person could have found otherwise, is because after Attorney Plera lost his arguments about an appraisal requirement in 10 days, and the fact that there was no basis for the offers, he simply made more frivolous arguments. And in January 12th of 2018, he added the reliance on offers of proof that contradicted sworn testimony, that violated Rule 1109. He injected those back into the record. He claimed that he had a conflict of interest in June of 2014, during a time when he was giving advice to his clients, when he informed them to reject an offer that was over $2 million, with absolutely no evidence. We're here five years after these proceedings started. And Attorney Plera has zero evidence. He's already been sanctioned, hasn't he? He's already been sanctioned. Yes, sir. How many times is he supposed to be sanctioned? Well, I think that should be derived by how many times a lawyer files the same frivolous plea. And what I would suggest is, and the Seventh Circuit has recognized, is that there has to be an incentive for parties to enforce Rule 137. Why? For the benefit of the courts. For the benefit of the profession. And that incentive is created when sanctions are in. Counsel, I just can't help but feel like I'm back at the trial court level. I mean, you know, this is an argument for the trial court, and the trial court, I'm sure, heard this argument based on your request. But we're a reviewing court, and the standard here, abuse of discretion, I'm still not there yet on how you've demonstrated that it was an abuse of discretion. Even though we might disagree or rule differently, our role is that we review the trial court's decision utilizing the appropriate standard of review. I understand the court's position. I respectfully disagree. And I think that if we look at the decision of the trial court, and the trial court's finding that was based on the subjective standard, that the court didn't believe that these matters were brought solely for an improper purpose, I think that that conclusion ignores the objective findings that the court had already made. And I think that it's an abuse of discretion, that his misinterpretation of the law and his reliance on the subjective component is, in fact, an abuse of discretion. A couple of questions. First, is there any case, I'm not aware of it, and I don't think you saw it, but I want to give you a chance to address this. Is there any case in the state of Illinois where, like here, there's been a request for 137 sanctions that the trial court has denied, and the appellate court has reversed the denial of sanctions? I believe that we cite a number of cases in our brief where the appellate court reversed the denial of sanctions. I don't have those names, but I'm almost sure that we cite three or four or five cases where the denial of sanctions was reversed. The other question is, as Justice Holder-White mentioned, it seems to me that what we're talking about is a matter of deference where, as a former trial judge, you have a sense about a case where our deference to the trial court should be the highest because trial courts have a sense about a case and what's going on in the case that it's hard to communicate for purposes of the record. A good example being the many times, for instance, as a trial judge, I had to decide who's going to be the custodial parent, and I had a sense about the case that I don't think I could communicate totally accurately, and yet there it was, and I made my rulings. And as an appellate judge now, I remember those times, and I remember the reason and how important it is to be deferential to trial judges for these reasons. Isn't this one of those instances where our deference to the trial court should be its highest? I don't think so, and here's why. The circumstances that are before the court today are similar to those that were present in the premerit case. There was a simple issue on good faith negotiations. There should have been a simple issue, and it was, was there an attempt to agree on the amount of compensation? At the time that Attorney Pleura filed his challenge on January 12, 2018, he was well aware that he had stipulated evidence that established that value of $357,000. He also knew that the pre-suit offers ranged from $1.2 million or $1.3 million to several million dollars for only 13 of his clients. And on that simple issue, Attorney Pleura had no evidence, none. He was given an opportunity during the remand to do discovery on good faith. He did not. He developed no evidence. And so by the time we got to January 12 of 2018, there should, no reasonable lawyer could have hit send on the challenge to good faith negotiations. No reasonable lawyer could have signed his name to the challenge to good faith negotiations at that point. And I submit that no reasonable person could find that that challenge complied with Rule 137. He had, Judge Valheimer, in no uncertain terms, five months before he filed this challenge, informed Attorney Pleura and made it clear that he had no evidence whatsoever to challenge good faith negotiations, that is, the amount of compensation. And even after Attorney Pleura was sanctioned, even after Judge Vinson found that Rule 137 was violated, he persisted. He persisted in re-arguing the same things that Judge Vinson had found were frivolous. He came up with new arguments that were frivolous on a lack of jurisdiction, on a failure to follow non-existent procedural requirements, on a citation to a Supreme Court case on it that allegedly allowed for the use of 2-615 on a 137 motion. The case doesn't say that. So the point here is that even after Attorney Pleura was sanctioned, he persisted with the frivolous arguments. He added new frivolous arguments. And that's why we're here. The Seventh Circuit, in its Mars Steel Corporation case, said that parties should be induced to defend the integrity of the courts without additional cost to themselves. And without being able to recover the cost of securing a Rule 137 award, the Seventh Circuit recognized that parties may often choose to abandon the pursuit as a means to keep costs down. I would submit that the Seventh Circuit's rationale is consistent with the Third District's decision in the Peabody Act. Here, when IAPC was confronted with these repeated claims that courts determined were contrary to existing law and contrary to fact, IAPC responded as directed by the appellate court in Singer, where the court said, The proper response to malicious prosecution or careless lawyering is to validate our profession's righteous outrage and indignation over such conduct with meticulous research, careful analysis, expansive writing, and aggressive advocacy. The court's decision today should ensure that there is an incentive for lawyers and parties to aggressively defend the courts against frivolous filings. Indeed, without an incentive to pursue Rule 137 violations, the important deterrent effect of Rule 137 would be diminished. The last thing I'd like to say is that we're certainly acutely aware of the court's finding that this litigation has gone on long enough. IAPC and its counsel certainly want an end to this litigation. But I think that the importance of enforcing Rule 137 and the importance of creating an incentive for lawyers to attack frivolous pleadings when they're filed to allow the courts to operate efficiently is significant. By the way, on that point you just mentioned, are there more cases coming? The record in the Turner cases, in the Temple cases, has been certified. And that is the last of the cases. So the last remand to, pursuant to the Kurth kind of remand, the trial court has now conducted the hearings, the record has been certified, it's coming back to us? As they would say, we're on the clock in the Turner cases. Okay. Is that the last one? That is. Yes. And is there an appeal from the trial court's ruling in that case? We'll find out in 21 days. Okay. Thank you. Counsel, I realize you're out of time, but I want to ask you a question. In addition to the issue we're here on today, you filed a petition for a rule to show cause. You also requested sanctions from this court. Where are we on those matters? Are you still wanting to pursue that? Are you prepared to discuss that today? I'm certainly prepared to discuss that today. I think the rule to show cause was in connection with a motion to dismiss certain of these defendants who had withdrawn the just compensation awards. And so you are still pursuing that? Well, I think that the motion to dismiss, certainly the law that the Illinois Supreme Court suddenly lays with that salientary rule under Illinois law is that if a landowner or a condor, sorry, a condor leave withdraws the benefits of the judgment that is a just compensation, that they waive their right to appeal, and this court no longer has subject matter jurisdiction. Well, with respect to your rule to show cause, of course, an order was entered asking the question, are you suggesting that this court take evidence on this? How will we proceed on this? And so I wanted to give you an opportunity to talk about how you see moving forward on those issues. Sure. The circumstances that were presented with in connection with the withdrawal of the just compensation awards struck me as being very similar to the circumstances in the Commonwealth Edison v. Will County Fraud case where the Illinois Supreme Court issued a rule to show cause on a jurisdictional issue. That prompted our request for a rule to show cause. And in your response, you indicated that if we're of the opinion that we're not the appropriate forum to consider evidence on this, then you're asking that it go back to the trial court for that purpose? I think that it could go back to the trial court for that purpose. Frankly, I don't think that it's necessary that it go back to the trial court for that purpose. I think that, certainly, Attorney Pleura had an opportunity to explain to the court in his response briefs at this point whether he was involved in the withdrawal of those funds, and that question is still unanswered. So I don't know that it would be necessary to send this back to the trial court. My position was that under Rule 361, the court could accept an affidavit on that issue. And then with respect to the case law, and you mentioned Malaysia, in that case, there's some discussion about when there's the acceptance of an award, and then, of course, Mr. Pleura takes the position that the cases you submitted stand for the proposition that it's only when you win and accept the award that you're barred, or that it's no longer appropriate for you to pursue the claim. Any position on that? I don't think that there's any basis in Illinois law for this suggestion that lack of subject matter jurisdiction that results from the withdrawal of funds applies only to a prevailing party. And, in fact, the... I'm sorry, let me grab my notes here. That case, the Malaysia case, is the Illinois Supreme Court. There's no distinction for a prevailing party. In fact, Malaysia says that the salutary rule, it applies to both the condom nor and the condomy, if they accept the benefits of the judgment. But if you look at the Forbeck case, the Forbeck case is directly on point. And the Forbeck case says that, quote, we do not believe there's any basis for permitting a party to an adjudication to avail himself of those parts of the judgment which he deems beneficial to him and afterwards seek to reverse those parts which he feels are unfavorable to him. And Forbeck cited Malaysia. You know, the other thing is that, if the court is going to even entertain this idea about prevailing parties, I think that if you read the argument that's been presented here, they argued that a party, the party in Forbeck, I believe the condomy, got an award that was more, it was in between the two appraised values. So would the court then have to engage in deciding whether, when does a party prevail? Is it only when it gets 100% of what its appraiser says? Or is it when it gets 50% more than what the state says? So there is absolutely no basis in Illinois law for the suggestion that the lack of subject matter jurisdiction that results from withdrawal of a condemnation award applies only to the prevailing party. That's our position. I think it's pretty clear from the Supreme Court's decision in Malaysia, which was relied on later in Forbeck. Alright, thank you very much, counsel. I appreciate that. Thank you. May it please the court, counsel. These have been long proceedings. They have created much strife in my family life. And in a lot of ways, makes me wonder whether I would ever want to do something like what I got into by representing some of these landowners ever again. That being beside the point, this is abuse of discretion standard. I think the court identified that. Probably the most important thing to say is when somebody like Enbridge brings a motion for sanctions, and there's been 12, I think, in Will County, they actually asked the trial court to put me in jail. They asked to have me taken to the sheriff's office and put in jail. But this was a little different. This one was an allegation that the file pleading was filed for an improper purpose.  Is that if you make an allegation that somebody like me has filed something for an improper purpose, you have the burden. We've outlined that in the brief. And you've got to have an evidence you're hearing and prove that out. We start with, it's the most basic thing, is they have the burden. And they didn't call not one witness. They didn't introduce one piece of evidence into the record. They didn't issue any subpoenas for people to come testify. What they did is they had two days of very vexatious, toxic comments about me personally, but not one thing was admitted into evidence to support the allegation in their claim, and a motion for sanctions is a claim, that I did something for an improper purpose. Now, how could they have done that? I suppose they could have maybe subpoenaed somebody and said, I was with that man and he said he was going to file this traverse hearing filing just so he could get paid or something. I don't know how they would do it. But they have to have something because it's their burden. Now, nothing. So you could stop right there. But, and because the trial court is not required to go into a lot of detail, and even the transcript says he's not going to go into the detail, he didn't believe that it rose to the level where sanctions were warranted. And he denied it. Again, we've got abusive discretion standard. In their filings, they say, well, they recite what's necessary for abusive discretion, but they don't give any explanation as to what it is that Judge Lawrence chose abusive discretion. So for that reason, we can stop it. I really do want to let the court know we have been extremely careful because after 12 different sanction motions or thereabouts and asking me to be placed in jail, I'm pretty careful. And we didn't want to challenge the court, and we were very, very clear on that after the court decision came out. One thing that I think is important is when we made this filing, in our brief, we called it a 10-page filing, but in reality, it's four pages. And that was the evidence that the landowners seek to present to rebut the good faith negotiation presumption, and it's in there. But there's four pages. And why we did this is because Judge Lawrence got the remand order, and he filed it to a team. Now, I wasn't there. Kathleen, my associate, was there, and I said one thing we're going to do is make sure we file everything to a team. And we did. And we did. Now, ultimately, we lost at the Travers hearing. But we prevailed in our original appeal, which I guess is just one big appeal, because they say, well, you're bad. You brought this appeal for a wrong reason. We prevailed in the appeal. This court remanded it back. We ultimately lost at the trial court on our challenge. That's the way it goes. I tell my clients, that's the way it goes. But to go from losing to now we want to sanction you again. Yes, out of the 10 or 12 sanctions, Judge Vincent sanctioned me. This court upheld it. And I paid the very next day $65,000. Should have hurt my wife on that one. But I paid it just to get it over with. And now we're here. And I'm not sure why we're here, other than one could say, is this appeal of Judge Lawrence's, is that good faith? Is that a 375B violation just to bring this? I never, we didn't appeal the substantive denial of our Travers in this case in front of the trial court. Because after we got denied by Judge Lawrence in the Travers proceeding, I said, well, we're done. It's over. We did the same thing down in DeWitt County with Judge Vincent. The sanctions, the sanctions, the sanctions. This court, this appellate court, upheld Judge Fellheimer's denial of sanctions. They tried up in Livingston County to get me. Why? Because they want to take this sanction to every place across the United States so they can say, don't ever challenge us. And if you try to get an attorney, we're going to do this to him. But we talk about, well, I used the argument. Kathleen was there. She used the argument in front of Judge Fellheimer. And Judge Fellheimer made a ruling. Judge Fellheimer's ruling is not in any way, and I think this court figures that out, binding on Judge Lawrence, nor is Judge Vincent's. The odd thing is that we had all of these motions for sanctions. Every one but one was denied. But that's the way the rule is. And so to have, how can it be that Judge Vincent finds a sanctionable conduct and Judge Fellheimer doesn't and Judge Lawrence doesn't? Well, no reasonable person, what that really means, no reasonable judge would find otherwise? Well, Judge Fellheimer didn't issue sanctions. The appellate court in the Third District didn't issue sanctions. But it's just boom, boom. Your Honor, I feel like I'm done. But I want to be open and honest with this court. If anybody's got a question, I'm here to answer it. If anybody wants to know why I did something, my credibility is very important. Any questions? Counsel, you heard my discussion with opposing counsel regarding the rule to show cause, and I hope you were able to hear me. I saw you kind of straining a little bit and trying to hear me. But do you have anything you want to say regarding the rule to show cause or the motion to dismiss? Sure. Rule 375 is for pursuing an appeal for an improper purpose. That's what it is, for an improper purpose, 375B. Now, when you think about it, this is just one big proceeding. And we started a long time ago, and we made some arguments. But one of our biggest reasons we're back here now is we made the argument we weren't given a travelers' hearing. We made that argument. And we prevailed on that argument, and we got sent back down there. Now, fundamentally, I look at this and we say, this is a 375B hearing, and when you read the rule, 375B, it's, well, it was for improper reason that you brought this, just to harass or something. And I say, how can it be that no reasonable attorney would do this? We prevailed. We prevailed. We got a remand, and the court said, you know what? You should have been allowed to make an offer of proof, which was denied in DeWitt and denied in McLean County. You should have been given a travelers' hearing, and you weren't. Go on back down, and that's what we did. So to say we pursued an appeal for an improper reason is, well, it's just a spurious argument. Now, we say, we've come up with now yet another argument. Ah, you, somebody took some money out. Well, I can tell you, one thing, as I stand here, I had no idea that anybody took any money out. Didn't know that at all. But those cases don't stand for that. The Malia case or Maya case stands for, in that case, the condemner, which was Cook County that actually paid the money, took possession of the property, and then wanted to appeal that. And the Supreme Court of Illinois said, no, you can't do that. You've paid the money. You weren't under any obligation to do it, but you went ahead and did it. And they want to turn that case around. If you look at the end of that Maya case, there's some, I don't know what you'd call it, dicta about, well, if you voluntarily accept a money, and they have turned that up, whether it's dicta or whatever it is, it certainly doesn't apply to this case. Well, that drew my attention as well. There's this part of the case where they talk about, while the precise question presented here was not involved, we read the prior decisions of Illinois courts to indicate that a property owner may not accept the fruits of an award and later appeal from the judgment. Right. And our point is, is if you look at, if we lost on a directed verdict, we didn't even get to go and present our side. In McLean County, we lost. Under no stretch of the imagination could you say that we prevailed in that case or we won in any sense because we didn't get to present our testimony from our expert, we didn't get to present testimony from our landowners, and we lost. We lost on a directed verdict at the end of the case. Their presentation, we didn't even go to trial. Did not even get to trial in this case. Well, let me ask you this. The compensation payments that they went and took out, are those considered fruits of an award? I don't think so. I mean, they're paying for temporary easement and permanent easement and they withdrew something. I'll represent to this court, I have no idea, but I don't believe any of those cases, the forebeck or any of those cases, stand for the proposition that you can lose and appeal. And because they've already used your property, that somehow by tendering that money there, and if a landowner goes and he loses the right to object to the traverse, to everything else that went wrong in this case, because this case was set back based on that, but even if there is some kind of law to support that, I guess this court could make a finding, a new finding, that well, that's now the law in this case. That even if they lost, if they pulled the money out of the treasures, that they lose the right, but there isn't any law that says that. No case law anywhere that you could lose at the trial court as a landowner and if you do take that money, you can't touch it until this long drawn out battle is over. Because if you do, then you lose the ability to appeal. Well then everybody would have a clear understanding of that, but that's not the case here. And so then we get to waiver and forfeiture. This is a dreamed up article or argument that they just dreamed up because it's winding down. If they want to make this argument, it had to be made in the trial court when we remanded that, or in this court somehow, but now to come up with this in the 11th hour, whoo. And then we get into what we've got. Your Honor, what we've got, I've got his affidavit. He said, we supported it with an affidavit. I've got it right here. His affidavit says, I'm a licensed attorney representing the Pele. That's what his affidavit states clearly. That's what he's knowledgeable about. Everything else is on information and belief. Everything else, there's no, what he believes happened isn't in this affidavit. What he has, the affidavit has testified he's an attorney. Nothing, none of this other stuff is in the record anywhere. He believes that. Well, if we're going to do that, then I guess we'll have to continue this deal. If somehow this court would say, all right, now we want to have everybody testify. Who took the money out, when, all of that, and where would that occur? Certainly not in this case. Not in this venue would it be proper. But then we get to, is it improper somehow to have done this? And then we say, okay, if you would say, somehow there's a case out there that says, somehow I should, if he didn't know about it, I didn't know about it. But somehow that would have put some obligation on me, and I had to stop everything with regards to those. Those other appeals, they're all consolidated appeals, are still alive and moving. And now we're going to say, okay, well, how many minutes did you spend on this case versus all these other ones that are still alive that didn't take their money out? But I say, waiver, forfeiture, never brought this up before. And it's just an end around, it's an end around the denial of 137. Because when you read everything, you see in those filings that what really, they throw everything in the kitchen sink about, oh, he's done all of this. And it's just a way to get around Judge Lawrence's denial of their motion for sanctions. Any other questions? I don't see any at this time, counsel. Thank you. Any rebuttal, counsel? Yes. Thank you, counsel. I guess I would start with these arguments about the motion to dismiss. Okay, I've been handling condemnation cases, I don't know, for 20-plus years. The law has always been, as stated in Malaysia, and as stated in Forbeck, that the salutary rule, according to the Supreme Court, is if you withdraw the benefits of a judgment, your case is moot. And the idea that waiver and forfeiture applies has no basis in Illinois law. Because there's no subject matter to the case. But you're raising that for the first time on appeal, right? Did you present this to the trial court? We didn't know about it, it hadn't been laid out. So, no? You're right, we did not present it to the trial court. But subject matter jurisdiction could be raised at any time. So this would affect subject matter jurisdiction? The court would not have a basis to justiciably resolve the issue? I think that the court would no longer have a basis to justiciably resolve the claims of the persons who withdrew their funds. Also, weren't there something, I forget the exact number, 11 or 12 columns, and some number less than all of them took the money? Right. So the appeals with regard to the others wouldn't be affected at all, would it? Not by the withdrawal, no. But their ability to appeal this court's decision to the Supreme Court would. I mean, not for the others, but... Look, the point here is that our position is that their cases became moot. So there's no longer a justiciable controversy. So their appeals should be dismissed. And... As opposed to just merely lose it. Pardon me? As opposed to lose it. Well, losing with the ability to then appeal to the Supreme Court. I think that once they took the money, their cases become moot. With respect to the idea of an evidentiary hearing, there was no objection to the proceedings that were conducted by the trial court that accepted numerous exhibits in connection with the Rule 137 proceedings. And the court asked, this is at the record at 337, asked Attorney Plura, do you have any objection to plaintiffs submitting their PowerPoints electronically? The answer was no. So there was never any objection to how the proceedings were held. And I think on the Pest v. Lloyd case, there was no need to have a full evidentiary hearing. The court asked earlier about cases where 137... Denial of 137 was reversed on appeal. Walsh, which is 312, Ill. 3rd, 910. Whitehan, 253, Ill. 3rd, 577. Whitmer, 335, Ill. 3rd, 501. And I believe this court has a case called Ingrate Marriage of Irvine. 215, Ill. 3rd, 629, where this court reversed the trial court. Much is made by Attorney Plura of prevailing in the initial appeal and securing remand. And I think that the court should look at that very closely, the notion that Attorney Plura prevailed here on the remand. If the court will recall, what Attorney Plura argued to this court, and which it accepted in good faith, was the idea that Attorney Plura needed discovery on the remand. This court accepted in good faith that Attorney Plura needed to submit offers of proof during the travelers' proceedings. This court accepted in good faith that Attorney Plura needed to call live witnesses at the traverse hearings. And what happened on remand was none of that. We went back on remand and there was no discovery request, not a single one. No discovery conducted on the issue of good faith negotiations. The attempt to rediscover Marathon... That is an inaccurate representation. In Kurth and the other cases, we said the traverse hearing was not properly conducted by the trial court. And in remanding for an opportunity to do so, and permitting Mr. Plura to pursue discovery, we also provided specific directions on how the discovery would be limited. That was a new first, wasn't it? That did not appear beforehand. So indeed, I think competent counsel, careful counsel, would take those directions and decide. There was a mandate from the trial court as well. This is a restricted discovery option for the landowners. And can they fall within it? So the idea, if you're saying that in good faith we said, yeah, we let them have discovery and on remand you didn't pursue it, that's because we gave directions with limitations, isn't it? Well, I think that the court certainly gave directions with limitations. That shouldn't have been a surprise to anyone. I mean, the court's limitations were that you had to seek relevant evidence. But I think it's telling that when we went back and during the remand, the only thing that was submitted were these recycled offers of proof that violated this court's rulings in Kerf and Hope and Monarch Farms because they allegedly relied on safety concerns for their opinions and contradicted the sworn testimony of landowners. So I appreciate the court's clarification of the traverse process and these kind of proceedings. I think it's going to go a long way to clarifying exactly what the process should be. I think, in fact, that something along the lines of those processes is what's been being adopted or what the court's sanction of that process. I think it provides great clarity. Counsel, you're out of time. We'll take this matter under advisement and be in recess. Thank you. Thank you.